IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| TAMARA PALOUIAN, et al., | : | CIVIL ACTION |
| --- | --- | --- |
| Plaintiffs | : | |
| | : | |
| v. | : | NO. 09-0196 |
| | : | |
| BENSALEM TOWNSHIP, et al., | : | |
| Defendants | : | |

M E M O R A N D U M

**STENGEL, J.** January 27, 2010

This civil rights action stems from the January 2007 fatal shooting of Frankie Lopez, Sr., on the steps of his apartment in Bensalem, Pennsylvania. Tamara Palouian and Jeanette Rizzo[1] brought the action as co-administratrices of Mr. Lopez's estate, and on behalf of their four children fathered by Mr. Lopez. The defendants include the Township of Bensalem, several of its agencies and administrators, and several named police officers. The amended complaint alleges various § 1983 claims, a wrongful death count, and a survival action. For the following reasons, I will dismiss this case in its entirety for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

I. **BACKGROUND**

The amended complaint alleges that on January 27, 2007, Bensalem Police

---

[1] On September 5, 2009, Miss Rizzo consented to the dismissal of this action upon the advice of her counsel. See Document #19, Exhibit B at 1. Because counsel did not file this document, I hereby direct the Clerk of Court to file the document (attached to this memorandum) and to reflect Miss Rizzo's voluntary dismissal of the case on the docket.

Officers came to Mr. Lopez's home to escort his girlfriend, Tamara Palouian, while she picked up her children's clothing from the apartment. See Am. Compl. ¶ 15. Mr. Lopez refused Miss Palouian's entry into his apartment in the presence of the police officers. Id. ¶ 16. The officers ordered Mr. Lopez to open up the door. Id. ¶ 17. Mr. Lopez exited the apartment. Id. The officers were standing at the top of a flight of stairs while Mr. Lopez was at the bottom of the stairs holding a baseball bat.[2] Id. The police ordered him to put the baseball bat down, but he refused. Id. ¶ 18. The police discharged their weapons and shot Mr. Lopez eleven times in the torso, eye, legs, arms, back, and the back of his head. Id. He was pronounced dead at the scene. Id. ¶ 19.

## II. **DISCUSSION**

Pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, a court may dismiss a claim "if the plaintiff fails to prosecute or to comply with these rules or a court Order." Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002). In determining whether dismissal is appropriate, the court shall consider: 1) the extent of the party's personal responsibility; 2) the prejudice to the adversary caused by the failure to meet scheduling Orders and respond to discovery; 3) a history of dilatoriness; 4) whether the conduct of

---

[2] I note as an aside that this allegation is contradicted by a letter written to Jeanette Rizzo by her attorney which indicates that the police report and photographs show that Mr. Lopez was at the top of the steps when the officers discharged their weapons. See Document #19, Exhibit B. As this fact is not dispositive here, a credibility determination is not warranted.

2

the party or the attorney was willful or in bad faith; 5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984). A court may dismiss an action pursuant to Rule 41(b) *sua sponte*. Caterbone v. Lancaster County Prison, 293 Fed. Appx. 867 (3d Cir. 2008).

In this case, the Poulis factors weigh heavily in favor of dismissal, although not all of these factors need be met for a district court to find that dismissal is warranted. Hicks v. Feeney, 850 F.2d 152, 156 (3d Cir. 1988). First, the plaintiff is solely responsible for the prosecution of this action. On November 16, 2009, I granted counsel's motion to withdraw their representation of Miss Palouian, gave her thirty days within which to retain replacement counsel or to decide if she would proceed *pro se*, and scheduled an in-person status conference for January 25, 2010, ordering the plaintiff to attend, with or without new counsel. See Document #20. At that time, she was the sole remaining plaintiff in the case. See Document #19, Exhibit B at 1. Miss Palouian neither attended the conference nor contacted the court to explain her failure to appear or to seek an extension.[3] She was twice notified of the conference and was aware that the sole matter

---

[3] On January 14, 2010, my civil deputy clerk contacted Miss Palouian to stress the importance of her attendance at the conference, and as a courtesy, mailed her a second copy of the court's notice scheduling the conference. The conference was scheduled to begin at 9:30 a.m. in chambers on January 25, 2010. Counsel for the defendants were present and waiting. After a half hour, my civil deputy clerk called Miss Palouian's home and left a message, asking her to contact chambers as soon as possible. After approximately fifty minutes, I began the conference with defense counsel and informed them of my decision to dismiss the case for failure to prosecute. Miss Palouian has yet to contact chambers to explain her failure to appear.

on the conference's agenda was to discuss her efforts at retaining replacement counsel. Accordingly, only Miss Palouian can be held responsible for her failure to obey the court's Order.

Second, the defendants have been prejudiced by the plaintiff's unexplained failure to attend the in-person status conference. They have also been affected by the prejudice inherent in attempting to defend a claim which has been stalled for months pending the plaintiff's finding replacement counsel or deciding to continue in the case *pro se*.

Third, the record also reflects a history of dilatoriness on the part of the plaintiff. The plaintiff has been aware for several months that her counsel had intended to seek withdrawal from this case due to its poor likelihood of success. Counsel repeatedly stressed to her the importance of finding replacement counsel, or of consenting to dismiss the amended complaint voluntarily as did her co-plaintiff. See Document #19, Exhibit C at 1-6. In fact, the record contains correspondence as far back as May 11, 2009, from counsel to Miss Palouian, informing her that there were serious issues in the case which raised questions as to counsel's ability to continue their representation of her, and asking her to obtain replacement counsel as soon as possible. See id. at 1-2.

Fourth, it is impossible to assign bad faith or willfulness to Miss Palouian's conduct, especially when she has yet to contact chambers regarding her failure to appear at the conference, her efforts in obtaining replacement counsel, or her decision whether to proceed *pro se*.

Fifth, while Poulis enjoins consideration of the effectiveness of sanctions other than dismissal, it is apparent that dismissal is the only reasonable alternative here. Cases construing Poulis agree that when a *pro se* litigant fails to comply with rules or court Orders, lesser sanctions may not be an effective alternative. See Briscoe v. Klaus, 538 F.3d 252, 262-263 (3d Cir. 2008); Emerson, 296 F.3d at 191. While Miss Palouian has yet to request *pro se* status, she nevertheless is currently without the benefit of counsel, and is the sole person responsible for failing to appear at the conference.

Finally, the apparent lack of merit of these claims also weighs in favor of dismissal. In their petition for leave to withdraw appearance as counsel, counsel for the plaintiff indicated that subsequent to the initiation of this case, they received "voluminousness [sic] evidence" in discovery from the defendants, and after review, discussed the evidence with Miss Palouian. See Document #19. Attached to that petition are copies of several letters written by plaintiff's counsel to the plaintiff informing her, for example, that they have encountered serious issues in the discovery received from the defendants, including photographs depicting the scene of the shooting of Mr. Lopez immediately following the shooting. See Document #19, Exhibit C at 1-7. Other letters informed Miss Palouian that counsel did not believe that there could be a successful verdict in this case. Id. In a letter dated August 31, 2009, counsel for Miss Palouian's co-plaintiff informed her, "[a]s discussed, the police report and photographs show that Mr. Lopez was at the top of the steps when the officers discharged their weapons.

5

Unfortunately, the close proximity between the officers and Mr. Lopez in my opinion would justify the officers' actions." See Document #19, Exhibit B at 1. The well-informed opinions of these attorneys are in agreement that this case lacks merit, and further support its dismissal.

In conclusion, the majority of the Poulis factors support dismissing this case. Despite ample opportunities, the plaintiff has not informed the court whether she has retained replacement counsel or decided to continue in the case *pro se*. This delay has caused prejudice to the defendants who are left to defend a stalled and apparently meritless action. Her failure to attend the status conference remains unexplained. Other sanctions would not be effective in this case. Accordingly, I will dismiss this case with prejudice for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

An appropriate Order follows.